IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| COLONEL SCOTT C. NAUMAN, | ) |
| Plaintiff, | ) |
| vs. | ) |
| CHRISTINE WORMUTH, in her official capacity as Secretary of the Army, LIEUTENANT GENERAL MILFORD H. BEAGLE JR., in his official capacity, and LIEUTENANT COLONEL BENJAMIN GONG, in his official capacity, | ) Case No. 2:23-cv-02102-DDC-TJJ |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**

Plaintiff Scott C. Nauman, through undersigned counsel, opposes the Defendants' motion to dismiss for lack of subject-matter jurisdiction and on the basis of non-justiciability.

**INTRODUCTION**

The Military Protective Order (MPO) imposed by the Defendants against the Plaintiff—an indefinite infringement on Plaintiff's constitutionally protected right to both procedural and substantive due process—lies far outside the domain of archetypal personnel management. Wholly unrestrained by a lack of procedural safeguards, the Defendants continue to engage in an action that is arbitrary, capricious, and materially unfair, by depriving the Plaintiff of his constitutional right to the care, custody, and control of his children without any due process. Because the Plaintiff has exhausted all administrative measures to seek relief, this Court has proper jurisdiction and the actions of the Defendants are outside the bounds of that which should be granted deference. This

1

is exactly the sort of controversy this Court of limited jurisdiction should adjudicate: one in which the military is exceeding their constitutional and statutory powers by imposing restrictions on a servicemember's parental rights under a framework of DOD Instructions completely devoid of procedural safeguards.

## BACKGROUND

Plaintiff restates the facts as set forth in his complaint. Plaintiff adopts the regulatory background stated in Defendants' motion (Doc. 10, pgs. 2 thru 4), except for noting that DoD Instruction 6400.06 was updated in 2023.[1]

Regarding the factual background provided by the Defendants', the Plaintiff adopted the facts as stated, adding that following the preliminary hearing on March 29, 2023, the State amended the complaint against the Plaintiff (Doc. 12-2). Also, COL Nauman's Article 138 complaint is now considered "final." On April 18, 2023, by order of Defendant Wormuth, The Judge Advocate General's designee, BG David Mendelson, reviewed the complaint and took "final action", pursuant to paragraph 19-14b of Army Regulation 27-10.[2] (Ex. 1).

## ARGUMENT

Based on the facts and legal standards offered by the Defendants, coupled with the Plaintiff's complaint (Doc. 1), Plaintiff presents a viable legal theory and alleges sufficient facts for his claims to survive a motion to dismiss. The dismissal of Plaintiff's claim would be an extraordinary and unjust result. "A court *may* dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

---

[1] DoD Instruction 6400.06: DoD Coordinated Community Response to Domestic Abuse Involving DoD Military and Certain Affiliated Personnel (May 16, 2023), https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/640006p.pdf

[2] Army Regulation 27-10: Legal Services: Military Justice, Chapter 19, (November 20, 2020) https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN31271-AR_27-10-001-WEB-2.pdf

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (U.S. 1984) (*citing Conley v. Gibson,* 355 U. S. 41, 355 U. S. 45-46 (1957) *emphasis added*). As stated above and in the Plaintiff's complaint (Doc. 1), the Army has taken final administrative action on this matter, and Plaintiff has alleged a constitutional claim. Therefore, the only basis for a lack of subject matter jurisdiction offered by the Defendants is that the claim is non-justiciable due to this matter being a routine personnel decision of the military.

**I. The Plaintiff has made a justiciable claim**

In *Lindenau v. Alexander*, 663 F.2d 68 (10th Cir. 1981) cited by Defendants, the Tenth Circuit adopts the *Mindes*[3] test, as have other jurisdictions. "Other jurisdictions have accepted the Fifth Circuit's analysis to determine the reviewability of military matters." *Lindenau* at 72. Therefore, this Court should examine the four *Mindes/Lindenau* factors to determine whether judicial review of the military decision at issue is appropriate. These factors are: These factors are (1) the nature and strength of the plaintiff's claim; (2) the potential injury to the plaintiff if review is refused; (3) the extent of interference with military function; and (4) the extent to which military discretion or expertise is involved. *Id*. at 71, *citing NeSmith v. Fulton,* 615 F.2d 196, 201 (5th Cir. 1980). Examination of these four factors favor Plaintiff's position.

**A. Nature and Strength of Plaintiff's Claim**

Plaintiff has a fundamental right and liberty interest in the care, custody, and control of his children, whether they be considered minors or adults. This interest in his children cannot be taken away from him without due process, without an event or showing of *imminent* danger. As the MPO has been in place for over eight months at the time of this writing, there presents no such

---

[3] *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971).

3

imminent danger from the Plaintiff to his children.[4] In *Santosky v. Kramer*, 455 U.S. 745 (1982) (cited in the Plaintiff's Article 138 complaint, Doc. 10-10, pg. 4, and in *J.B. v. Wash. County,* 127 F.3d 919 (10th Cir. 1997), cited by the Defendants), the Court ruled that absent exigent circumstances there must be a hearing. *Santosky* at 777. Not only has there been no hearing, there never will be one. Again as cited by Defendant in Doc. 10, pg. 2: "10 U.S.C. § 1567 affords commanders great discretion in the length of an MPO, as evidenced by the definition of an MPO's duration: 'A military protective order issued by a military commander shall remain in effect until such time as the military commander terminates the order or issues a replacement order.'" Plaintiff alleges, and it is for this Court to determine, whether such an indeterminate authority is a violation of Plaintiff's constitutional rights.

Every case cited by the Defendants strengthens the Plaintiff's claim, as all these cases were decided in state courts on the respective state governments making decisions on family law. None of the cited cases point to an instance in which the military was given the right to rule on family law. In the current case, the State has ruled that Plaintiff should be allowed access to his children (*see* Ex. 2), and that the state court has also previously dismissed the CPO against Plaintiff (*see* Doc. 10-5). When Plaintiff was bonded out following his arrest, the court specifically refrained from limiting Plaintiff's interactions with his children. The MPO is simply trying to overrule legitimate court orders, which as the Defendants have pointed out, hold jurisdiction in the current case.

**2. Potential Injury to Plaintiff if Review is Refused**

---

[4] In apparent recognition of this same fact, the State court limited the scope of Plaintiff's bond conditions directing Plaintiff only to refrain from engaging in any conduct that might intimidate victims or witnesses in the pending criminal case.

Prior to this MPO being issued, Plaintiff had been allowed to have access to his children every other weekend and one night per week per Plaintiff and Mader-Nauman's previous agreement after their five-year long divorce proceedings (*see* Ex. 2). Holiday parenting time was equally divided between both parents for all the children. Since the MPO was ordered against Nauman, Plaintiff has had no contact with any of his children and has missed valuable time that could have been spent with his daughters.

This factor favors the Plaintiff once again due to the continuing, devastating injury to the Plaintiff by effectively terminating his parental rights. LTC Gong has stated that Plaintiff's children do not want to be around their father. This is hearsay and irrelevant, especially in light of the court order in Ex. 2 which has determined what is to be in the best interests of the Plaintiff's children. LTC Gong received this information from a lawyer in the Office of the Staff Judge Advocate who heard this information from a Special Victims Counsel, who are supposedly relaying interests of the protected parties. There are no affidavits from those parties, nor would those "elections" trump COL Nauman's right to communicate or at least participate in the parenting of his children. But LTC Gong's apparent reliance on this indirect information, without Plaintiff being afforded an opportunity to challenge the information, further demonstrates the arbitrary execution of this commander's purported authority. Unchecked and unfettered, LTC Gong's use of an unceasing infringement on Plaintiff's parenting rights must be reviewed by this Court.

Plaintiff has and continues to be deprived of his constitutional right to be with and care for his children. His second-youngest daughter Hazel has been bedridden or hospitalized multiple times since January of this year due to an unknown illness. Plaintiff has been unable to speak to his daughter's physicians to discuss treatment due to the MPO. He has also been unaware as to the

education of his daughters and does not know how they are doing academically, socially, and athletically. He has been unable to go to band concerts, choir concerts, sporting events, causing irreparable harm. These events that occur and are lost to the MPO being in place are events that Plaintiff will never be able to replicate. By virtue of LTC Gong's unlawful order, Plaintiff has even been prohibited from mailing his daughters, to include his adult children who are not involved in the pending criminal matter, their Christmas presents, and as such, they are sitting on his fireplace hearth where they have been since December. The breakdown of the Nauman family within the past five years has taken its toll on the Plaintiff's four daughters, and this has led to the idea that any sort of future engagements with Plaintiff's children by Plaintiff will be coldly rejected due to his absence because of the MPO. This aspect of the test once again favors the Plaintiff due to the valuable time with his daughters lost due to the MPO.

**3. Extent of Interference with Military Functions and Extent to Which Military Discretion or Expertise is Involved**

These last two factors of the *Mindes* test favor reviewability because matters beyond the military's boundaries should be accorded little deference. "Courts should defer to the superior knowledge and expertise of professionals in matters such as promotions or orders directly related to specific military functions." *Mindes* at 201-02. However, in the current case, the MPO does not call for military expertise or involve a "specific military function." The extent of interference with military functions is non-existent since there has been no showing of imminent danger to a member of an Army family. Plaintiff has been allowed to continue to perform his duties as a commissioned officer of the United States Army since the MPO has been in effect, and his performance has been exemplary, further proving the disconnect between the pending civilian criminal matter and the Army's mission and readiness. Plaintiff was recently awarded a challenge coin for excellence from the outgoing Brigadier General in charge of the Mission Command Center of Excellence on Fort

Leavenworth, as one of six officers who are Directors and managing portfolios under the general's command (*see* Ex. 3).

Per Executive Order 9877, signed by then President Harry S. Truman, the United States Armed Forces has five common missions which include "To support and defend the Constitution of the United States against all enemies, foreign or domestic. To maintain, by timely and effective military action, the security of the United States, its possessions and areas vital to its interest. To uphold and advance the national policies and interests of the United States. To safeguard the internal security of the United States as directed by higher authority and; To conduct integrated operations on the land, on the sea, and in the air necessary for these purposes." Executive Order 9877, 13 Fed. Reg. 431 (Feb. 5, 1948). Military staffs over the years have fashioned rigorous training to accomplish these goals, and as such, the modern United States military is equipped to handle combat missions and their challenges.

Family law, however, is not an area that any branch of the Department of Defense can claim expertise in. The forum with superior expertise in visitation matters and matters regarding law between parents and children is a family court. *Lindenau*, while related to parental-child relations, does not provide a persuasive lens through which this matter may be viewed. In *Lindenau*, the appellant was attacking "only the non-waivable regulation which does not permit single parents of minors to enlist. It is well established that there is no right to enlist in this country's armed services." *Lindenau* at 72. As demonstrated above, this matter is in no way related to military readiness, as was the case in *Lindenau*. This is squarely confined to the matter of parental rights of a currently-serving Soldier.

The military imposition of an unlawfully unconstrained MPO not allowing Plaintiff the ability to visit his daughters, despite another court ruling that he was given that authority under

7

due process, has in effect revoked that State court's order without any judicial involvement. Despite the Defendants' claim that this MPO is tied to the resolution of the criminal case, there is no evidence of such. In fact, the Defendants claim that the criminal trial is *unrelated* to the terms of the MPO: all four of the Plaintiff's daughters are protected parties under the MPO, when only two daughters are named victims in the criminal case. Furthermore, since the Defendants cite a "preference of the protected parties" as a reason for the MPO, the implication is that even an acquittal in state court will not result in lifting the MPO if his daughters still want it in place. Based on the Defendants' pleading and LTC Gong's declaration, Plaintiff could theoretically never have any contact with his family ever again. Lastly, no impartial body has ever ruled that an MPO balances the safety of Plaintiff's children with Plaintiff's parental rights allowed to him by the 5th amendment of the U.S. Constitution. Because of this, the military does not have the proper expertise on the current matter.

## **CONCLUSION**

Defendants make mention of a quote from the case of *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) in which they note that ""it is difficult to conceive of an area of governmental activity [other than the military] in which the courts have less competence." Likewise, it is difficult to conceive of an area in which the military has less competence than family law. A lack of family courts within the military court system, of family-law specialized attorneys, of guidelines within the UCMJ on family law matters, combined with no due process or end date, demonstrates that the United States military should be provided no deference regarding their decision to issue this MPO.

For the foregoing reasons, the Plaintiff requests that the Court denies the Defendants' motion to dismiss.

Dated: June 12, 2023.

                                        <u>s/Aimee M. Bateman</u>
                                        Aimee M. Bateman
                                        Bar Number 29033
                                        Attorney for Plaintiff
                                        Bateman Law Group, LLC
                                        302 Shawnee Street
                                        Leavenworth, KS 66048
                                        Phone: (913) 565-2998
                                        E-mail: aimee@leavenworthlawyer.com